**ARUNDEL CORPORATION, Libellant,**

v.

**CHARLESTON SHIPYARDS, INC.,**
**Respondent.**

**No. 1136.**

United States District Court
E. D. South Carolina,
Charleston Division.

Aug. 24, 1962.

Harold A. Mouzon (Moore & Mouzon) Charleston, S. C., for libellant.

A. T. Smythe, Jr. (Buist, Buist, Smythe & Smythe) Charleston, S. C., for respondent.

WYCHE, District Judge (sitting by designation).

In compliance with Rule 46½ of the Admiralty Rules, 28 U.S.C.A., I find the facts specially and state separately my conclusions of law thereon, in the above suit, as follows:

### FINDINGS OF FACT

1. Libellant Arundel Corporation is the owner of the Barge Admiral which incurred damage to a spud. The spud in question is a triple-layered fabricated steel pole seventy feet long which rides in a collar attached to a corner of the barge, and by being raised or lowered it is used to anchor the barge. The damage to the spud consisted of its being bent at a point approximately 16.4 feet from. its top and being set over approximately 2 feet out of line.

2. Charleston Shipyards, Inc. is a ship repair yard located at Charleston, South Carolina. Representatives of the Charleston Shipyards, Inc. inspected the spud and the corporation contracted to heat, fair and remove the stress of the spud and return it to the barge for an agreed price of $2,500.00.

3. Charleston Shipyards, Inc. and its personnel are experienced in the ship repair business and have straightened many similar spuds. Charleston Shipyards, Inc. attempted to straighten the spud in question by heating it at the point where it was bent and lowering weights on the bent up end, thus bringing it to the straight position. However, each time the weights were removed, the spud returned to its damaged shape until on the third or fourth try the spud at the point where the heat was being applied wrinkled and became so damaged as to make any further effort to repair it by this method impractical.

4. The contract for repair was entered into between the parties upon the belief by both parties that the spud could be straightened by heating the spud, forcing it to a straight position and allowing it to cool.

5. The spud in its undamaged condition had a value of $12,000.00, and allowing for the bid price to correct the damage, had a value of $9,500.00 at the time it was delivered to the respondent.

6. After respondent's efforts to straighten by heating had failed, the spud was capable of being cut off twenty feet from its end, leaving a useable spud fifty feet in length, which had a value of $8,571.50. The twenty-foot section which could thus be removed had a value for scrap of $171.43, giving a total value to the spud after it became apparent that it could not be straightened by the heat method of $8,742.93.

7. Other costs involved in rigging a new spud and preparing the old spud for use are as follows: Freight on a new spud from the manufacturer to Charles-

**516**

ton, $400.00; to cut off the old spud at the fifty foot length and prepare it for use as a fifty-foot spud, $200.00.

8. From the foregoing figures, I find as a matter of fact that when the parties entered into the original contract the value of the bent spud to Arundel Corporation was $9,500.00, assuming that the shipyard could have corrected it in accordance with the basic contract; that after the shipyard's efforts to repair had failed, the libellant had a spud which was worth, the useable section and the scrap section, a total of $8,742.93, and that additional expenses to libellant in working on the old spud and shipping the replacement would be $600.00; that as a result the total damages which can be ascribed to the failure of the shipyards to straighten the spud is One Thousand, Three Hundred, Fifty Seven and 07/100 ($1,357.07) Dollars.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the parties and of the subject matter of this action.

2. The contract for repair between the parties, which read: "The spud to be unshipped, moved to shop, heated, faired, and stress removed and returned to vessel" was a contract by respondent to perform the work called for by the contract in a proper and workman-like manner.

3. Charleston Shipyards, Inc. failed to carry out its contract to repair the spud in accordance with the contract. Charleston Shipyards, Inc. is, therefore, liable for the resulting loss and damage suffered by Arundel Corporation.

4. The libellant Arundel Corporation is entitled to recover its loss and damage in the sum of ONE THOUSAND, THREE HUNDRED, FIFTY-SEVEN and 07/100 ($1,357.07) DOLLARS.

5. The respondent's Cross-Libel, seeking to recover for work done on the spud and labor and expense in moving and rigging a new spud should be dismissed.

It is, therefore, ORDERED, ADJUDGED AND DECREED, That the Cross-Libel be dismissed and that the libellant Arundel Corporation have judgment against the respondent Charleston Shipyards, Inc. for ONE THOUSAND, THREE HUNDRED, FIFTY-SEVEN and 07/100 ($1,357.07) DOLLARS, with interest and its costs.